Plaintiff, defendant and one J. Weldon Hood, in equal proportions, owned the stock of a partnership, the name of which, if any it had, is not disclosed by the record, whose business was that of reclaiming crank case oil. The partnership owned a plant with equipment in West Monroe, Louisiana. Financial distress afflicted it in August, 1938, and Hood abandoned what *Page 137 
he evidently believed to be a "sinking ship" and went to the State of Texas. The business was left on the hands of plaintiff and defendant with obligations and no funds. On September 23, 1938, defendant by written act sold his stock or interest in the partnership to George W. Lester for $300 cash. Thereafter, George W. Wise acquired Hood's and Lester's stock and also a one-sixth interest from plaintiff. This suit is a consequence of alleged breach by defendant of an agreement with plaintiff involving the sale to Lester.
Plaintiff alleges that he and defendant had an agreement whereby they would attempt to carry on the business of the partnership after Hood's abandonment; that plaintiff would endeavor to sell an interest in the business and if successful he and defendant would share equally in the proceeds thereof, and thereafter they would own equally the unsold interest; that pursuant to said agreement petitioner sold one-third interest in the business to George W. Lester for $300 cash, which sale was consummated by defendant assigning his one-third interest in and to the partnership to said Lester, but which, it is alleged, was made for the joint benefit of petitioner and defendant. Defendant refused to pay over one-half of the price received by him. This suit followed. In addition to $150, one-half of the price, plaintiff sues on two other items of alleged indebtedness, less $10 credit, but, as to these, the demand has been abandoned.
Defendant denies the existence of the alleged agreement and that he owes plaintiff any amount; but avers that the sale to Lester was made for his own personal account.
Plaintiff appealed from judgment rejecting his demand.
Defendant excepted to the petition's sufficiency in that it disclosed neither a cause nor a right of action. The exceptions were overruled. Answering the appeal, defendant reurges the exceptions and, alternatively, prays that the judgment be affirmed.
The exceptions were filed and disposed of prior to taking of testimony. Therefore, their efficacy or lack of it has to be appraised from the well pleaded facts of the petition. The exceptions are predicated upon the well known legal proposition that a partnership cannot exist without the consent of all its partners. Article 2801, Civil Code. It is argued that when Lester purchased defendant's interest in the partnership he was of the belief and was led to understand that defendant was thereby entirely eliminated therefrom and, naturally, did not know that he would continue to own stock therein through and by the alleged agreement with plaintiff; that, in view of these facts, the alleged agreement is unenforcible. This argument is not entirely supported by the allegations. There is no allegation of the petition that Lester would have objected to defendant being a co-partner or that his purchase from him depended upon his ceasing to have an interest in the partnership. It is true, as argued, that a co-partnership may exist only so long as the individual partners agree, and that new partners may be admitted only with the consent of all existent partners. But we are unable to perceive wherein any of the mentioned contingencies could have any bearing upon the right of plaintiff to recover judgment because of defendant's breach of the alleged agreement to which they alone were parties. If Lester was deceived or misled by a secret agreement between the parties, as alleged, he might have had good ground to resolve the sale and/or dissolve the partnership. Whether the partnership should continue and if so, who its members should be were matters that addressed themselves to the partners and are entirely extraneous factors to a determination of the petition's sufficiency. The ruling of the lower court on the exceptions is correct.
Defendant admits that after Hood went away he and plaintiff discussed the partnership's financial condition frequently and that plaintiff suggested the advisability of selling an interest therein in order to improve its financial structure and to carry on its operations, but he positively denies that he consented to the proposition involved in the suggestion.
Plaintiff testified in support of the allegations of his petition and introduced as witnesses in his behalf two brothers-in-law and a nephew of his wife, who in material respects corroborated his own testimony anent the alleged agreement. One of the brothers-in-law testified that while working for the partnership he overheard plaintiff and defendant discussing its business affairs and that during one of said discussions it was agreed between them, in order to carry on the business, to sell an interest therein. He also says it was agreed that the proceeds of the hoped for *Page 138 
sale would be equally divided between them. He did not hear any discussion of the proportionate ownership of the stock after such sale should be made. The nephew also worked for the partnership and he testified that he heard the same conversation but his version of its substance differs in some non-essential respects from that given by the brother-in-law.
The other brother-in-law also heard a discussion between plaintiff and defendant, different from that testified to by the other witnesses, in which, he says, it was mutually agreed between the parties that an interest in the partnership would be sold and the price thereof divided equally between them and each would thereafter have equal interest in the business.
Defendant's denial of the alleged agreement has no direct support save his own testimony. The circumstances strongly lend aid to plaintiff's position. The business in which the parties were equally interested was financially embarrassed. Unless financial assistance could be procured it would certainly go on the rocks and they would thereby lose their investments. Naturally, both wished to see the business succeed. It would have been but a normal business arrangement for them to reach common ground in the effort to prevent a total collapse and to adopt a course from which they would share equally in success or failure. The record makes it quite clear that at no time prior to the sale to Lester did defendant have in mind the desire or purpose to sever entirely his connection with the partnership. This is clearly reflected from negotiations the night before the sale was closed when he at first offered to sell to Lester one-half of his interest. This offer was refused by Lester because of its smallness.
It is also true that at the meeting in Mr. Lester's office the night preceding the sale to him, at which were present plaintiff, defendant, Wise and Lester, no mention was made of the agreement between defendant and plaintiff. There existed no good reason for doing so. It was a private business affair in which no one was personally concerned save the contractants.
Plaintiff's explanation of why defendant's stock was offered for sale and not his own or a part thereof, is plausible. Defendant had not actively participated in the conduct of the business but plaintiff had, and was well acquainted with the possibilities of its success. Had he offered to sell his stock, an unfavorable impression would have been made upon a prospective investor, because, as a rule, a person is not willing to sell stock in a small concern managed by him which is a success or has bright hopes of succeeding. It might be said that in thus dealing with Lester "all the cards were not put on the table", but he is not complaining. Surely the strategy employed was as much defendant's as it was plaintiff's.
Plaintiff's good faith and sincerity are demonstrated from his action in selling stock to Wise. He transferred only one-sixth interest in the partnership and holds the other one-sixth for defendant.
Plaintiff testified that after the sale to Lester was closed he called upon defendant to pay over one-half the price to him and for one reason or other, defendant put him off, but finally (on a Saturday) handed him $10 and promised to pay the balance on the following Monday when the banks would be open. Defendant contends that this $10 was loaned to plaintiff.
Only questions of fact are involved in the case. The record discloses that the trial judge held the case under advisement for several months and then on his own motion reopened it. This action evidently suggests that the judge was very much uncertain as to a just judgment in the case.
We have diligently studied the testimony adduced by both sides and weighed the same in the light of the facts and circumstances bearing upon the transactions mentioned. We are clearly of the opinion that plaintiff has sustained the burden of proof resting upon him.
We are not unmindful of the uniformly recognized rule that to the trial court's conclusions on factual questions much weight should be given; and reversal thereof not be made save when found manifestly erroneous. In the present case we have experienced no serious difficulty in reaching the conclusion that not only the law and the evidence are with plaintiff, but that all equitable considerations are in his favor. It seems obvious that defendant's contentions are the result of afterthought. Surely, when the trade was closed with Lester he had no other intention but to go forward with and consummate the agreement with plaintiff.
For the reasons herein assigned, the judgment appealed from is annulled, avoided and reversed, and it is now ordered, *Page 139 
adjudged and decreed that plaintiff, J. Elmore Burke, do have and recover judgment against the defendant, Richard C. Jolissaint, in the sum of $140, with legal interest thereon from judicial demand until paid. Defendant is cast for all costs.
DREW and HAMITER, JJ., concur.